**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Capitol Indemnity Corporation,

Plaintiff,

v.

Civil No. 01-2425 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

Especially for Children, Inc.
and Scott Hudlow

Defendants.

---

Joseph A. Nilan, Craighton T. Boates, Gregerson, Rosow, Johnson & Nilan, Minneapolis, Minnesota, for Plaintiff.

Jeanne Hvass Unger, Kimberly T. Ross, Rider, Bennett, Egan & Arundel, Minneapolis, Minnesota, for Defendant Especially for Children, Inc.

Patrick V. Johnson, Speeter, Johnson, Hautman & Hamilton, Minneapolis, Minnesota, for Defendant Scott Hudlow.

---

## Introduction

Capitol Indemnity Corporation ("Capitol"), a Wisconsin-based insurance company, commenced this suit against Especially for Children, Inc. ("EFCI"), a Minnesota-based corporation that operates child care facilities in the Minneapolis area, and Scott Hudlow, a Minnesota resident and former teacher's aide at EFCI. Capitol seeks a declaratory judgment that it is under no obligation to defend or to indemnify the Defendants against a personal injury action that is currently pending in Hennepin County



AUG 29 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

District Court. In that suit, E.L. and P.L., individually and as the parents of a minor child, T.L (collectively "Claimants") allege that Hudlow repeatedly sexually abused T.L. at EFCI's Eden Prairie facility. Before the Court are Capitol's and EFCI's cross motions for summary judgment. For the reasons stated below, the Court will grant EFCI's motion with respect to the duty to defend and will grant Capitol's motion with respect to its duty to defend and to indemnify Hudlow for the claims asserted against him.

## Background

### I. The Policy

Capitol issued a commercial insurance contract, policy number CP00060841 (the "Policy"), to EFCI for the period from March 3, 1997 to March 3, 1998. (Nilan Aff. Ex. 1.) The Policy covers EFCI's Eden Prairie facility as well as EFCI's employees, including Hudlow. (Id. Ex. 1 at CIC0004, CIC0029.) It treats EFCI and Hudlow as separate insureds. (Id. Ex. 1 at CIC0032.) In Section I of the Commercial General Liability Coverage Form, the Policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Id. Ex. 1 at CIC0023.)

The Policy states that it applies only to "bodily injury" that occurs during the

policy period. (Id.) Further, the Policy contains two relevant exclusions–the Intentional or Expected Injury Exclusion ("Intentional Exclusion") and the Abuse or Molestation Exclusion (the "Abuse Exclusion"). Those two exclusions exclude from coverage, respectively, "expected or intended from the standpoint of the insured" and bodily injury or personal injury "arising out of" actual or threatened abuse or molestation or the negligent employment and supervision of persons who are accused of abuse. (Id. Ex. 1 at CIC0023, 0056.)

The Policy also contains a Day Care Errors and Omissions/Professional Liability Coverage Endorsement (the "Day Care Endorsement"), which modifies the "Commercial General Liability Coverage Part Products/Completed Operations Liability Coverage Part." (Id. Ex. 1 at CIC0065.) The Day Care Endorsement provides coverage for "sums which any insured shall become legally obligated to pay as damages arising out of the rendering or failing to render professional services during the policy period in the conduct of the named insured day care operation." (Id.)

**II. Underlying Action**

Claimants commenced a personal injury suit against Defendants in Hennepin County District Court, with a five-count Complaint, alleging (1) negligent infliction of emotional distress, (2) negligent hiring, supervision, and retention, (3) negligent failure to provide safe environment, (4) strict liability, and (5) battery. (Nilan Aff. Ex. 2 (Hennepin County Compl.) Counts 2-4 are alleged against EFCI only, whereas Counts 1 and 5 are

alleged against both Hudlow and, through the doctrine of respondeat superior, EFCI. In their complaint, Claimants assert that during the time T.L. attended EFCI's Eden Prairie facility (December 1997 through June 2000), Hudlow repeatedly sexually abused her. (Id. Ex. 2 ¶ 7.) In connection with the underlying action, Claimants were asked in an interrogatory to describe the time and place of the instances of alleged abuse. In response, Claimants stated that they were "unable to determine the exact time of each episode" but go on to explain that they "believe[d] that the abuse did occur from June 1998 to June 2000," when Hudlow regularly watched T.L. in the Teddy Bear room. (Id. Ex. 7 at PL006.) They explained that they believed that the alleged abuse occurred in the closet of the Teddy Bear/Dinosaur room. (Id.)

After the underlying suit was commenced, EFCI and Hudlow tendered their claims to Capitol, which is now defending them under a reservation of rights. (Unger Aff., Ex. C. ¶ 9, Ex. D.)

## III. Procedural Posture

On December 27, 2001, Capitol filed suit in this Court seeking a declaratory judgment that it is under no duty to defend or to indemnify Defendants with respect to the underlying state court action. It has now moved for summary judgment, contending that it owes no duties to Defendants because the alleged abuse did not occur during the policy period or, if it did, the Policy's exclusions apply to Defendants' claims. Simultaneously, EFCI moved for summary judgment, seeking a declaration that Capitol has a duty to

defend and to indemnify it in the underlying action.[1] EFCI asserts that, at this stage, Capitol cannot show that the abuse occurred outside of the policy period and furthermore, the Day Care Endorsement provides coverage for the claims against EFCI.

**Analysis**

Summary judgment is proper if, viewing the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences which may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).

> If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir. 2001) (quoting

---

[1]EFCI did not file a counterclaim. Instead, in the wherefore clause of its Answer, it states that it seeks "an order declaring and adjudging that plaintiff's policies provide coverage and that plaintiff has a duty to defend and indemnify EFCI in the underlying action." (Answer ¶ XII.)

Celotex, 477 U.S. at 323 (1986)).

The nonmoving party may not rest on mere allegations or denials, but rather must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). The court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 249. The nonmovant, however, cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

## I. EFCI

The arguments in support of and in opposition to Capitol's Motion and EFCI's Motion are virtually identical. The issues raised therein concern whether the alleged abuse occurred during the policy period and if so, whether coverage exists under the Day Care Endorsement in light of the Abuse Exclusion and Intentional Exclusion.

### A. Duty to Defend

Minnesota courts have explained that an insurer assumes two duties to its insured:

the duty to defend and the duty to indemnify.[2] Reinsurance Assoc. of Minn. v. Timmer, 641 N.W.2d 302, 308 (Minn. Ct. App. 2002). The duty to defend is contractual and broader than the duty to indemnify. Meadowbrook, Inc. v. Tower Ins. Co., Inc., 559 N.W.2d 411, 415 (Minn. 1997). It arises when any part of the claim against the insured is arguably within the policy's scope. Reinsurance Assoc., 641 N.W.2d at 308. "If a complaint alleges several claims, and any one of them would require the insurer to indemnify, the insurer must provide a defense against all claims." Id. (emphasis added).

**i. Timing**

The insured bears the burden of proving the policy was "triggered" and that coverage is available. Northern States Power Co., v. Fidelity & Cas. Co. of New York, 523 N.W.2d 657, 663 (Minn. 1994). If the insured has met its prima facie burden, the insurer has the burden to establish that, in fact, no injury occurred during the policy period. Domtar, Inc. v. Niagara Fire Ins. Co., 563 N.W.2d 724, 732 (Minn. 1997). In this case, the Policy is only "triggered" if the bodily injury occurs during the policy period. (Nilan Aff. Ex. 1 at CIC0023.) In their Complaint, Claimants allege that the abuse occurred between December 1997 and June 2000. Based on this, EFCI tendered its claims to Capitol under the Policy, which was in effect for the period from March 3, 1997 to March 3, 1998.

---

[2]In insurance coverage actions involving diversity of citizenship, state law controls the analysis of the insurance policy. Home Ins. Co. v. Aetna Ins. Co., 236 F.3d 927, 929 (8th Cir. 2001). The parties have briefed the coverage issues under Minnesota law.

Capitol contends that EFCI has not met its burden of proving that coverage under the Policy has been triggered. Capitol bases its argument on Claimants' interrogatory answer, in which Claimants stated that they believed that the abuse occurred sometime from June 1998 to June 2000, when Hudlow worked in the Teddy Bear room and T.L. was a student in that room. Capitol also relies on the deposition testimony of Lynn Seltz, the director of the EFCI's Eden Prairie facility. Ms. Seltz avers that T.L. was not moved to the Teddy Bear room (and thus was not under Hudlow's regular supervision) until after the Policy expired. (Nilan 2d Aff. Ex. 17 at 56:5-10.)

In determining whether there is a duty to defend, a court normally compares "the allegations in the complaint in the underlying action with the relevant language in the insurance policy." Meadowbrook, 559 N.W.2d at 415. Courts may, however, look beyond the complaint to extrinsic facts to establish the existence or nonexistence of the duty to defend. Tschimperle v. Aetna Cas. & Sur. Co., 529 N.W.2d 421, 424 (Minn. Ct. App. 1995). The Eighth Circuit Court of Appeals, applying Minnesota law, has explained that "in determining whether there is a duty to defend, a court must give the benefit of the doubt to the insured" and that as a result, "unless the pleadings and facts clearly establish that the claim falls outside the policy terms, the duty to defend arises." John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 418 (8th Cir. 1991).

The Complaint alleges that the abuse occurred between December 1997 and June 2000. The Policy period extended from March 3, 1997 to March 3, 1998. While it is

true that Claimants "believe" that the abuse occurred between June 1998 to June 2000, they are not parties to this lawsuit. Their interrogatory answer is inadmissible hearsay because it is an out-of-court statement offered for the truth of the matter asserted. See Fed. R. Civ. P. 801(c), 802. "Evidence offered to support or defeat a motion for summary judgment must be such evidence as would be admissible at trial." See Hopkins v. Empire Fire & Marine Ins. Co., 474 N.W.2d 209, 212 (Minn. Ct. App. 1991). Accordingly, the interrogatory answer cannot be used to support Capitol's motion. Moreover, even if the answer were to be considered, it is based on T.L.'s recollections; she may not be a reliable source of information, given her age and the traumatic nature of the allegations. Therefore, in addition to considering the allegations in the Complaint, the only admissible evidence that can be considered at this stage is the deposition testimony of Ms. Seltz.

Capitol focuses on Ms. Seltz's testimony that T.L. was not in the Teddy Bear room and regularly under Hudlow's supervision until after the Policy expired. She also could not recall if during the policy period Hudlow had ever supervised children during nap time in a room other than the Teddy Bear room. (Nilan 2d Aff. Ex. 17 at 54:1-10.) She did testify that children from different rooms were supervised together during the early morning and late afternoon hours (Id. at 21:8-25), "at some time or another" Hudlow worked in all of the different preschool rooms (Id. at 35:17-25), staff members and Hudlow occasionally supervised nap time alone in other rooms (including the one T.L. was in prior to the Teddy Bear room) (Id. at pp. 38-40); and the room T.L. was in

before the Teddy Bear room had a closet like the closet in the Teddy Bear room. (Id. at 41:15-24.)

The Court concludes that there is a genuine issue of material fact as to when the abuse occurred and that a reasonable jury could find that Hudlow abused T.L. during the policy period. Viewing this testimony in the light most favorable to EFCI, Capitol has not clearly established that the claims alleged in the underlying lawsuit did not occur during the policy period. See John Deere, 929 F.2d at 418. Accordingly, Capitol is not entitled to summary judgment on this ground.

**ii. Day Care Endorsement**

The Day Care Endorsement provides:

> This endorsement modified insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
>
> This insurance provided under this policy shall apply to sums which any insured shall become legally obligated to pay as damages arising out of the rendering or failing to render professional services during the policy period in the conduct of the named insured day care operation.

(Nilan Aff. Ex. 1 at CIC0065 (emphasis added).)

EFCI contends that it is entitled to coverage under the Day Care Endorsement, if the underlying claim against it is a claim (1) for damages, (2) which arises out of (3) the rendering or failure to render professional services in the conduct of its day care facility.

EFCI states that the claims against it satisfy all three elements. In response, Capitol maintains that the endorsement does not apply because the alleged abuse in no way constitutes professional service and because the Abuse Exclusion and the Intentional Exclusion modify any coverage that might be provided under the Day Care Endorsement. Two issues, then, are before the Court: (1) whether any of the claims asserted against EFCI fall within the scope of the Day Care Endorsement and (2) the effect of the exclusions on the Day Care Endorsement.

Whether any of the claims against EFCI fall within the scope of the Day Care Endorsement depends upon whether any of the claims arise out of the rendering or failure to render professional services. Claimants have asserted five claims against EFCI. For the purposes of deciding whether a duty to defend exists, the Court will analyze three of the five claims asserted against EFCI– negligent hiring, supervision, and retention, negligent failure to provide a safe environment, and strict liability (collectively, the "negligence claims").

Relying on Houg v. State Farm Fire & Cas. Co., 509 N.W.2d 590 (Minn. Ct. App. 1993), EFCI asserts that the claims against it in the underlying action arose out of the rendering of improper services or the failing to render proper professional services. In Houg, a woman sued a church and its minister after she was sexually abused by the minister during counseling sessions with him. Houg, 509 N.W.2d at 590. The church sought coverage under its insurance policy, but the insurance company maintained that

the exclusion for bodily injury due to "the rendering or failure to render professional services" applied. Id. at 591. The Minnesota Court of Appeals held that the alleged sexual abuse constituted "rendering or failing to render professional services." Id. at 592. The court reasoned that the exclusion applied because the woman had based her claims against the church on the "tainted professional services rendered" by someone the church had hired. Id.

In response, Capitol relies on Minnesota School Bd. Assoc. Ins. Trust v. Dahl, 566 N.W.2d 374, 375-76 (Minn. Ct. App. 1997). In Dahl, a teacher was accused of engaging in intentional and unlawful sexual contact with one of his minor students. Dahl, 566 N.W.2d at 375. The teacher sought coverage under his insurance plan, which provided protection "for acts committed 'while performing his or her duties' as a teacher." Id. The Minnesota Court of Appeals held that the exclusion did not "cover a teacher's personal activities that are unrelated to his teaching duties." Id. at 376. The court concluded that the acts alleged did not occur during the act of teaching because the acts were "inconsistent with the teaching duties." Id. Capitol contends that the Dahl case is the most instructive and controlling case for determining whether there is coverage under the Day Care Endorsement.

The Court disagrees. Capitol is attempting to argue that the Day Care Endorsement does not afford coverage to EFCI because Hudlow's acts are not covered by the Day Care Endorsement. Under the Policy's severability clause, however, EFCI and

Hudlow are treated as separate insureds and thus, coverage for the claims against EFCI must be analyzed separately. See Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co., 567 N.W.2d 71, 77 (Minn. Ct. App. 1997) (analyzing separately coverage for a claim of employer's negligence). Dahl is distinguishable because it involved the issue of whether claims made against the alleged abuser for the abuse were covered by the professional liability protection. In this instance, the relevant activity is not Hudlow's conduct but rather EFCI's conduct. See Mork Clinic v. Fireman's Fund Ins. Co., 575 N.W.2d 598, 600 (Minn. Ct. App. 1998) (explaining that a negligence cause of action stems from plaintiff hiring of an alleged abuser). As a day care provider, EFCI provided professional services to Claimants by offering Claimants a place to take T.L. each day where she was to be cared for by qualified teachers and aides. In their negligence claims, Claimants allege that EFCI failed to perform certain duties in the hiring and supervising of Hudlow as well as in the caring for T.L. These failures stem directly from the duties EFCI should have performed, and accordingly, the negligence claims can only be described as falling within the scope of the failure to render professional services. See Houg, 506 N.W.2d at 593. As to the negligence claims, the Court concludes that the Day Care Endorsement provides coverage.

The next issue before the Court is whether the Abuse Exclusion or the Intentional Exclusion impact the coverage provided under the Day Care Endorsement. The Abuse Exclusion provides:

This endorsement modified insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to Paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
2. The negligent:
   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Reporting to the proper authorities, or failure to so report; or
   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1. above.

(Nilan Aff. Ex. 1 at CIC0054 (emphasis added).) The Intentional Exclusion provides:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damages" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Id. Ex. 1 at CIC0023 (emphasis added).)

The form schedule, which lists the forms and endorsements that were added to the Policy, identifies, among other added items, the Abuse Exclusion and the Day Care Endorsement and states that the forms are "applicable to all premises and coverages." (Nilan Aff. Ex. 1 at CIC0020.) Relying on this language, Capitol contends that the Abuse Exclusion modifies the Day Care Endorsement so that the Day Care Endorsement does not apply if the Abuse Exclusion applies. In response, EFCI compares the specific language in the Abuse Exclusion to the Day Care Endorsement and argues that (1) the endorsement supercedes the exclusion or (2) any ambiguity in the Policy should be construed in favor of coverage.

The Day Care Endorsement does not list the specific sections of the Policy to which it applies; instead, it states that it "modifies insurance provided under. . . .[the] Commercial General Liability Coverage Part Products/Completed Operations Liability Coverage Part." (Id. Ex. 1 at CIC0065.) The language in the Day Care Endorsement is broad–it applies to "sums which any insured shall become legally obligated to pay as damages." (Id.) In comparison, the Abuse Exclusion lists the specific sections of the Policy to which it applies, including the Bodily Injury and Property Damage Liability section found in Section I–Coverages of the Commercial General Liability Coverage

Form, which is also where the Intentional Exclusion is found.[3] Capitol could have worded the Abuse Exclusion more broadly; it did not. The Court determines that the narrowly drafted Abuse Exclusion applies only to those provisions of the Policy to which is has been specifically attached. See e.g., Redeemer, 567 N.W.2d at 78 (recognizing that "narrowly drafted exclusions apply only to what they specifically exclude"). Accordingly, in determining which provisions of the Policy are impacted by the Day Care Endorsement, the Abuse Exclusion will be treated in the same manner as the Intentional Exclusion.

"Where provisions in the body of the policy conflict with an endorsement, the provision of the endorsement governs." Horace Mann Ins. Co. v. Independent School Dist. No. 656, 355 N.W.2d 413, 418 (Minn. 1984). The Day Care Endorsement states that it modifies the insurance provided under the Commercial General Liability Coverage Part, which is the same part of the Policy where the Intentional Exclusion is found and the Abuse Exclusion was added. The Day Care Endorsement applies to some of the claims against EFCI in the underlying lawsuit that are within the scope of the exclusions; in particular, to the negligence claims. Because endorsements govern conflicting policy provisions, the Court concludes that the Day Care Endorsement governs to the extent that it conflicts with either the Abuse Exclusion or the Intentional Exclusion. Therefore, the

---

[3]Moreover, the language in the Abuse Exclusion tracks the language used in the Intentional Exclusion. (Compare Nilan Aff. Ex. 1 at CIC0023 with CIC0054.)

Court need not reach the issue of whether the Abuse Exclusion or Intentional Exclusion applies to the claims against EFCI because if the exclusions did apply, they would be superceded by the coverage provided for under the Day Care Endorsement.

EFCI has met its burden of showing that at least some of the claims against it in the underlying state action are potentially covered by the Policy. The claims arguably fall within the policy period, and coverage is provided for the negligence claims under the Day Care Endorsement.[4] Accordingly, Capitol has a duty to defend EFCI in the underlying action. Reinsurance Assoc., 641 N.W.2d at 308 (duty to defend arises if any of the claims would require the insurer to indemnify). Therefore, with respect to the duty to defend, summary judgment shall be entered in favor of EFCI.

### B. Duty to Indemnify

In order to establish a duty to indemnify, EFCI must prove that all claims alleged in the underlying lawsuit fall within the policy coverage. Reinsurance Assoc., 641 N.W.2d at 308. "Otherwise, the possibility that the insured's liability might ultimately be based solely on a non-covered claim presents genuine issues of material fact that preclude summary judgment." Id. If any one of the claims alleged in the complaint falls outside of the policy, the question of the duty to indemnify is not ripe and the Court must defer judgment until the decision in the underlying action is final. Id.

---

[4]At this stage, the Court is only addressing the negligence claims and is making no determination regarding the remaining claims.

In this case, the Claimants' underlying action is currently pending in Hennepin County District Court. As discussed at oral argument, it is unclear whether or not the issue of when the abuse occurred will be decided in the underlying action.[5] If it is determined that the abuse did not occur during the policy period, there is no duty to indemnify. In addition, at trial it could be decided that EFCI is not liable for some of the causes of action alleged against it. While the Court has determined that there is a duty to defend EFCI, the parties have not briefed, and the Court therefore will not decide, whether or not Claimants' respondeat superior claims fall within the scope of the Policy. This determination will impact the issue of indemnification. Therefore, genuine issue of material fact remain concerning EFCI's underlying liability and Capitol's duty to indemnify. For that reason and given the other unresolved issues before the Court, the question of the duty to indemnify is not ripe. Accordingly, with respect to the issue of the duty to indemnify, Capitol's and EFCI's Motions will be denied.

## II. Hudlow

Capitol moved for summary judgment, seeking a declaration that it is under no duty to defend or to indemnify Hudlow. Capitol contends that it owes not duties to Hudlow because the claims against him are not covered by the Policy. In response,

[5]There appears to be no sound reason why this issue of when the abuse occurred should not be submitted to the jury in the state court action. Without intending to intrude into the state court's prerogative with respect to the appropriate handling of the issues before it, the Court urges the parties to seek resolution of the timing of the abuse issue by asking the state court to submit the issue to the jury.

Hudlow focuses on the Day Care Endorsement and the "reasonable expectations of the insured" doctrine to argue that Capitol owes a duty both to defend and to indemnify under the Day Care Endorsement.

The Court's previous analysis of the timing of the abuse allegations applies. A separate analysis, however, is needed to determine whether the Day Care Endorsement applies to the claims against Hudlow. As discussed above, EFCI and Hudlow are treated separately under the Policy. The claims against Hudlow include a claim for negligent infliction of emotional distress and a claim for battery, both of which stem from the alleged abuse of T.L. by Hudlow. To secure coverage under the Day Care Endorsement, Hudlow attempts to merge what he is accused of doing with his duties as a teacher's aide at EFCI. He defines "professional services" in a day care setting as the service of providing basic care and safety for the children. He states that he failed to provide basic care and services when he allegedly abused T.L.

The overall intent of the Day Care Endorsement is to provide coverage for Hudlow for activities within the scope of his employment that he did or should have done while rendering professional services as a day care teacher's aide. As a teacher's aide, Hudlow's duties did not include sexually abusing the children under his care and supervision. The alleged acts are personal in nature and sufficiently distinct from any form of professional services. Accordingly, the claims against Hudlow are not covered by the Day Care Endorsement because they are not related to the professional services that the

endorsement is meant to cover. See Dahl, 566 N.W.2d at 376 (explaining what constitutes personal activities and what is covered by a similar provision); Horace Mann, 355 N.W.2d at 417 (explaining the extent to which a business pursuits endorsement applies).

Because the Day Care Endorsement does not provide coverage for the claims against Hudlow, the next issue is whether the Abuse Exclusion applies to exclude coverage of the claims against Hudlow that would otherwise be covered under the general coverage language found in Section I of the Policy.[6] The section of the Abuse Exclusion that applies to the claims against Hudlow states:

> This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:
>
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(Nilan Aff. Ex. 1 at CIC0054 (emphasis added).) The "arising out of" phrase has been described as providing a "broader sweep" of coverage when compared with more narrowly drawn phrases. See Redeemer Covenant Church, 567 N.W.2d at 77 (reviewing

---

[6]The Parties spend a significant amount of time discussing the Intentional Exclusion, which states that the insurance provided under the Policy does not apply to "Bodily injury" or "property damage" expected or intended from the standpoint of the insured." (Nilan Aff. Ex. 1 at CIC0023.) Because the Court has determined that the broadly worded Abuse Exclusion applies to the claims against Hudlow, the Court does not reach the parties' arguments concerning the Intentional Exclusion.

the distinction between exclusions that contain the words "arising out of" and those that do not). A review of the underlying complaint reveals that the claims against Hudlow arise out of the alleged sexual abuse of T.L.. See e.g., McAuliffe v. Northern Ins. Co. of N.Y., 69 F.3d 277, 279 (8th Cir. 1995) (construing Missouri law and concluding that the same policy language covered claims for emotional and physical damages from alleged sexual abuse). In fact, as recited in each specific count, both claims stem directly from the alleged sexual abuse that is specifically described in the general allegations section of the underlying complaint. (See Nilan Aff. Ex. 2.) Thus, the Abuse Exclusion applies and therefore excludes coverage of the claims against Hudlow in the underlying action.

Because there is no coverage under the Policy, Capitol has no duty to indemnify Hudlow. If, as a matter of law, there is no duty to indemnify, there is no duty to defend. See Woida v. North Star Mut. Ins. Co., 306 N.W.2d 570, 574 (Minn.1981). Accordingly, the Court will grant Capitol's summary judgment motion with respect to Hudlow's claims.

**Conclusion**

Upon all the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED** that

1. Defendant Especially for Children, Inc.'s Motion for Summary Judgment (Doc. No. 33) is **GRANTED IN PART**. It is hereby **DETERMINED** that Plaintiff has a duty to defend Defendant Especially for Children, Inc. against all claims asserted against it in the action entitled P.L. v. Especially

for Children, Inc., which is currently pending in Hennepin County Court. The Motion with respect to the duty to indemnify is **DENIED**; and

2. Plaintiff Capitol Indemnity Corporation's Motion for Summary Judgment (Doc. No. 30) is **GRANTED IN PART**. It is hereby **DETERMINED** that Plaintiff has no duty to defend or indemnify Defendant Scott Hudlow against all claims asserted against him in the action entitled P.L. v. Especially for Children, Inc., which is currently pending in Hennepin County Court. The Motion with respect to Especially for Children, Inc. is **DENIED**.

Dated: August 29, 2002

Richard H. Kyle
United States District Judge